UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMUEL LIT, <br><br> Plaintiff, <br><br> v. <br><br> ZAZZLE INC., <br><br> Defendant. | Case No. 1:16-cv-07054 <br><br> **PATENT CASE** <br><br> **Jury Trial Demanded** |

**ZAZZLE INC.'S RULE 12(b)(6) MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM**

## **TABLE OF CONTENTS**

Page(s)

I. BACKGROUND ............................................................................................................. 1
II. LEGAL STANDARD ..................................................................................................... 5
    A. This case should be disposed of at the pleading stage through Rule 12(b)(6). .................................................................................................. 5
    B. The law of 35 U.S.C. § 101 ................................................................................. 6
III. ARGUMENT ................................................................................................................... 7
    A. The Patent-in-Suit is invalid under 35 U.S.C. § 101. ........................................... 8
        1. Claim 16 is directed to an abstract idea. ................................................... 8
        2. Claim 16 contains no inventive concept to transform the abstract idea into patent-eligible subject matter. .................................. 10
        3. The remaining claims are invalid because they are directed to the same abstract idea. ........................................................ 13
IV. CONCLUSION .............................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................... 5

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ............................................................................ 6, 10, 11

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ........................................................................................... 5, 6, 7, 15

*Cuvillier v. Taylor*,
  503 F.3d 397 (5th Cir. 2007) .......................................................................................... 5

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .................................................................................... 13

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980) ....................................................................................................... 6

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
  665 F.3d 930 (7th Cir. 2012) .......................................................................................... 5

*Intellectual Ventures LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) .................................................................................... 10

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) ................................................................................ 12, 14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) .................................................................................................... 7

*Morales v. Square, Inc.*,
  75 F.Supp.3d 716 (W.D. Tex. 2014) ........................................................................... 8, 9

*In re TLI Communications LLC Patent Litigation*,
  823 F.3d 607 (Fed. Cir. 2016) ..................................................................................... 9, 12

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
  No. CV 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) ............................ 11

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F. 3d 709 (Fed. Cir. 2014) ............................................................................. 4, 6, 10

*Venture Associates Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) ..........5

**Statutes**

35 U.S.C. § 101 .......... *passim*

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ..........1, 5

Defendant Zazzle Inc. ("Zazzle") moves to dismiss this case because the Complaint does not state a claim upon which relief can be granted.

The claims of the patent-in-suit are directed to the abstract idea of "instantly" displaying "revolving" content, such as advertisements, on a website. The patentee wanted to provide a system to accomplish his goal in a "rapid yet cost effective manner." But the asserted claims merely cobble together generic computer components (e.g., a website, a database) with undefined, abstract concepts (e.g., a "display carousel," a "display engine"), and then claim the desired result without any specific mechanism for achieving that result. The claims are thus in direct violation of settled patent law and invalid under 35 U.S.C. § 101.

Resolving these issues does not require discovery or formal claim construction. Therefore, to avoid waste of judicial and party resources unnecessarily litigating invalid patents, Zazzle requests that the Court dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

U.S. Patent No. 8,793,330 is directed to a "a digital media application platform and method which dynamically delivers and displays content via computerized systems and internet websites in real time." '330 Patent, 1:14-18. The applicant noted that the "dissemination of information," and particularly advertising, had "significantly improved" over the past decade. *Id.*, 1:22-25. But he longed for improved applications for presenting information "in a rapid and efficient way" on the Internet. *Id.*, 1:26-30. The patentee noted that "common methods" of Internet advertising included "banner

advertisements" and "'framing' of advertisements." *Id.*, 1:31-35. Both, however, were "relatively static" and "limited." *Id.*, 1:26-35. Thus, the applicant noted a need for a better system to disseminate information "in a rapid yet cost effective manner." *Id.*, 1:36-39. Such a system should use "minimal computing capacity" while "maximizing the available space" on a "website or other computing display window." *Id.*, 1:39-42.

The patentee described his "invention" as a "display carousel" that "dynamically displays and disseminates various types of information." *Id.*, 3:39-43; 5:32-33. A display carousel is just one or more "display windows" that contain content like text, graphics, animation, and video. *Id.*, 3:43-49. When there is more than one display window, the display carousel may "give the appearance of a rotating 'carousel' of display windows." *Id*. The display carousel may be "configured" to either pause for a specified period of time or continuously rotate at "a desired rate of speed." *Id.*, 2:59-63. Exhibit A of the appendix to the specification provides a visual example of the "display carousel":



*See, e.g.*, '330 Patent, Exhibit A-1.

The specification explains that the "invention" is a "series of sophisticated software engines" that are "specifically designed" to perform certain functions

"instantly." *Id.*, 5:32-39. But at no point does the written description ever explain what these "engines" are, what their "design[]" is, by what mechanism they operate, or how they are able to perform their functions "instantly." Figure 1 illustrates the "flow diagram" of the embodiment of the "present invention" with boxes that presumably represent the "sophisticated software engines." The system includes a conventional "server" 2000 and a conventional "client web browser" 3000. *Id.*, 4:27-30. The "server" includes a conventional "database" 2100. *Id.*, 4:35-37. "The system of the instant invention," the patent explains, "may be based upon any suitable operating system" such as a "Linux based operating system." *Id.*, 3:35-37.

Instead of describing how each of the above-stated components of the Display Carousel application are programmed, the patentee went to great lengths in the specification to provide a "user manual" for the www.yourdisplaycarousel.com website. For example, the specification describes how a user could create an account and log in. *Id.*, 6:38-51. Once logged in, the user was presented with the website's "Home Page," which included a "menu of options for creating and/or editing the display carousel, obtaining, tracking or otherwise manipulating statistical data associated with the Display Carousel, and/or other options." *Id.*, 6:58-61. The user could upload or remove "images, text, hyperlinks, audio, video and other data and/or files to the windows of the Display Carousel at the 'Upload Pictures' page." *Id.*, 8:29-32. The "Setup Code" page permitted a user to access a "code," which presumably could be copied and pasted into a website in order to implement the display carousel. *See id.*, 4:22-23; 8:11-13.

Exemplar claim 16, is set forth below:

A system for displaying content, said system comprising:

> *a display carousel* embedded into a *website or webpage*, said display carousel comprising
>
>> *one or more display windows* configured to display said content and to *revolve* at a predetermined rate of speed when said display carousel is displayed with said website or webpage on said web browser,
>
>> *a display engine* configured to deliver said content to said display windows of said display carousel when said website or webpage is displayed on a web browser, wherein said display engine is in communication with said website or webpage and a server of said system, and
>
>> *a database* comprising storage and retrieval functionality for statistical and financial information about said content displayed on said display carousel, wherein said database is in communication with said server,
>
> wherein said content is *instantly* passed between said display engine and said display carousel when said display carousel is displayed with said website or webpage on said web browser.

*Id.*, Claim 16 (emphasis added). As seen above, the claim recites no new software programming logic, no new hardware, no new uses or implementations of conventional software or hardware, by which the desired result of "instantly" displaying "revolv[ing]" content may be achieved.

The '330 Patent did face an objection by the examiner during prosecution that it was not directed to eligible subject matter. But that objection was based on the Patent Office's pre-*Alice* subject matter guidelines. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F. 3d 709, 720 (Fed. Cir. 2014) (Mayer, J., concurring) ("[T]he PTO has for many years applied

an insufficiently rigorous subject matter eligibility standard"). The examiner in this case was satisfied simply by the inclusion of "at least one hardware element" in an apparatus claim. *See* Ex. 1, May 26, 2011 Final Rejection at 4.

## II. LEGAL STANDARD

### A. This case should be disposed of at the pleading stage through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must provide "allegations that raise a right to relief above the speculative level." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Documents that a defendant attaches to a motion to dismiss may be properly considered "if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim. *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial*, 772 F.3d at 718-19 (Mayer, J., concurring). Claim construction is not required to conduct a § 101 analysis. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B. The law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an

element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). A claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01. Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300.

### III. ARGUMENT

The '330 Patent is invalid because it attempts to preempt a desired result using generic computer components, unsupported by any substantive underlying steps enumerating how the desired result may be attained. The patent claims abstract subject matter in direct violation of well-settled law. The Supreme Court, in a line of cases culminating with *Mayo*, has repeatedly cautioned that abstract ideas such as the mere result claimed here are patent-ineligible in the absence of an inventive concept. The '330 Patent claims no such inventive concept. By claiming the solution in the abstract, the patent effectively claims all mechanism for "instantly" displaying "revolving" content on a website, while failing to describe even a single one.

### A. The Patent-in-Suit is invalid under 35 U.S.C. § 101.

#### 1. Claim 16 is directed to an abstract idea.

In determining patent eligibility under § 101, the court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. The Court must look past the claim language to the purpose of the claim to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F.Supp.3d 716, 724 (W.D. Tex. 2014). All claim 16 is "trying to achieve" is the conventional idea of displaying information on a website.

Claim 16 describes the following generic functionality: (1) displaying information on a website; (2) delivering information to be displayed; (3) tracking information that is displayed; and (4) allowing information to be displayed "instantly." Claim 16 also recites the following generic components, specified at a high-level of generality, intended to implement these basic steps, including: (1) a "display carousel" embedded into a website with one or more display windows that "revolve at a predetermined rate of speed"; (2) a display engine "configured" to "instantly" deliver content to the display carousel; a "server"; and (4) a database comprising basic storage and retrieval functionality. '330 Patent, cl. 16.

Databases, servers, and websites were well-understood, routine, and conventional. Moreover, the "display engine" is not defined in the specification, but purportedly is one of the "specialized software engines" identified in the specification. *Id.*, 5:32-33; *see also* Fig. 1. The mechanism for this display engine is not described. All the patent states is that it has the function of "receiv[ing] and deliver[ing] images to client

-8-

web browser." *Id.*, 4:34-35. Likewise, the "display carousel" is simply "one or more display windows each of which are capable of displaying text, graphics, animation, video and/or other content." *Id.*, 2:43-46. None of these generic components are described as employing any specific mechanism, and no specialized programming or algorithms are provided.

The Federal Circuit's analysis in *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016), is instructive. The representative claim in that case recited conventional components such as a "telephone unit" and "server" to classify an image and store the image based on its classification on a mobile telephone system. *Id.* at 611. Like the case at hand, the functions of the components were "described in vague terms without any meaningful limitations." *Id.* at 612. After noting that the patent was "directed to the use of conventional or generic technology in a nascent but well-known environment," the Court concluded that the claim was invalid because it purported to patent an abstract idea. *Id.* at 612-13. Like the claims in *TLI*, claim 16 is "not directed to a specific improvement to computer functionality," nor does it "provide any technical details for the tangible components." *Id.* at 612. Instead, the concept embodied by the majority of limitations in claim 16 recites an abstraction—an idea, having no particular concrete or tangible form. Claim 16 is thus directed to patent-ineligible subject matter. *Alice*, 134 S. Ct. at 2355.

## 2. Claim 16 contains no inventive concept to transform the abstract idea into patent-eligible subject matter.

Because claim 16 is directed to an abstract idea, the Court must next determine whether the claims contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the claim "must include additional features" which "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotations and citations omitted). Here, claim 16 is broadly generic and does not contain meaningful limitations that would restrict the claim to a non-routine, specific application of the abstract idea of "instantly" displaying "revolving" content on a website.

The specification admits that the dissemination of information and display of advertising content on a website was routine and had been around for at least a decade. *See* '330 Patent, 1:22-25, 1:31-35. The purported novelty of Lit's invention was thus to provide a system or application to do the same albeit "in a rapid, yet cost-effective manner" while permitting "revolving" display windows to be "instantly" displayed. *See* '330 Patent, 1:31-35. But merely performing a task more efficiently is far from inventive and "does not materially alter the patent eligibility of the claimed subject matter." *Bancorp*, 687 F.3d at 1278. Likewise, instantly displaying moving content (e.g., revolving display windows at a predetermined rate) was conventional and routine. Making advertisements on a webpage non-static using generic website components was, in effect, no different than displaying commercials on television. *See Intellectual Ventures LLC v.*

*Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("television commercials for decades tailored advertisements based on the time of day during which the advertisement was viewed").

And, while claim 16 purports to "instantly" pass content between the display engine and the display carousel, such "real time" capability is not a meaningful limitation sufficient to add an inventive concept to the abstract idea. *See Tuxis Techs., LLC v. Amazon.com, Inc.*, No. CV 13-1771-RGA, 2014 WL 4382446, at *5 (D. Del. Sept. 3, 2014) (the addition of an electronic communications device to perform an otherwise conventional step in "real time" does not save claim from invalidity); *see also Bancorp*, 687 F.3d at 1278 (performing a task more efficiently does not materially alter patent eligibility).

Even considering the elements "as an ordered combination," *Alice*, 134 S. Ct. at 2355 n.3, claim 16 is still invalid because there is no "order" to its combination. There is simply no description in the claim or specification as to how the purported invention is specially programmed to operate any differently than the prior art. The specification merely provides long-winded instructions on how a user can navigate through the menus of a now-defunct website. *Id.*, 6:39-10:2. But none of these instructions describe how the purported invention operates in a non-conventional manner to: (1) create a "display carousel" with one or more display windows "configured to display said content and to revolve at a predetermined rate of speed"; (2) deliver "said content" to the display windows "instantly"; or (3) implement the database within the system to store and retrieve financial and statistical information about the content displayed.

-11-

Claim 16 is analogous to the claims at issue in *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015). There, the patent claimed "the use of a conventional web browser Back and Forward navigational functionalities without data loss in an online application consisting of dynamically generated web pages." *Id*. at 1344. While "maintaining state" was stated to be the essential innovation, the Federal Circuit noted that "[t]he mechanism for maintaining the state is not described." *Id*. at 1348. Instead, like claim 16, the patent simply "describe[d] the effect or result dissociated from any method by which maintaining the state is accomplished." *Id.* at 1348. The Federal Circuit thus concluded that the claim was directed to the abstract idea itself and thus not patent-eligible subject matter. *Id.* The same is true of claim 16. *See id.; see also TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention").

As discussed, the purported point of novelty is directed to the *result* of instantly displaying revolving content on a website, but claim 16 does not describe any particular *mechanism* for achieving the result. Like the claims in *Internet Patents* and *TLI*, the limitations in claim 16—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea. Because it is altogether devoid of any meaningful limitations, claim 16 is thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60.

### 3. The remaining claims are invalid because they are directed to the same abstract idea.

The other independent claims in the '330 Patent purport to patent the same abstract idea: "instantly" displaying "revolving" content on a website. ''330 Patent, cls. 1, 19. Both are directed to the same conventional activity in claim 16 (i.e., displaying information on a website, delivering information to be displayed, and allowing information to be displayed instantly). *Id.* Both recite the same generic components (website, server, display carousel, display engine). *Id.* Although some additional computer terms are also recited (e.g., "real time," "hypertext," "dynamically delivered," "processor," "portal," "web browser," "computerized system," and "upload gateway"), those terms are likewise conventional, and no additional limitations are recited. Both claim 1 and claim 19 are thus invalid for the same reasons. *See Alice*, 134 S. Ct. at 2359-60.

Nor do the dependent claims include any meaningful limitations. Rather, each is directed to unpatentable extra-solution activities. For example, several of the claims are directed to mere data-gathering (i.e., what content a user of the www.yourdisplaycarousel.com website would upload on the "Upload Pictures" page). *See id.*, cl. 2 (the display windows comprise "individual content"); cl. 3 (the "individual content" includes a link); cl. 8 (the "content" includes one or more of a photograph, a graphic, an image, audio content, video content, textual content, or a hyperlink to a website); *see also id.*, 8:29-32. Claim 17 simply indicates that "content may be purchased." *Id.*, cl. 17. Such data-gathering steps and other pre-solution activities like these are insufficient to transform the abstract idea into patent-eligible subject matter. *CyberSource*

*Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) ("Even if some physical steps are required to obtain information from the database (e.g., entering a query via a keyboard, clicking a mouse), such data-gathering steps cannot alone confer patentability.").

Other claims include additional generic computer terms that relate to the post-solution activity of where the content is intended to be displayed. *Id.*, cl. 4 (email, blog, media player, or other computerized device); cl. 5 (web browser), cl. 12 (web browser), cl. 15 (web browser), cl. 20 (web browser). Simply identifying a technological environment or category of use, however, does not make a limitation "meaningful." *See Clear with Computers*, 21 F.Supp.3d at 763 (claim not meaningfully limited "if it contains only insignificant or token pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment.").

Finally, numerous claims merely specify additional desired results. *See id.*, cl. 7 (display windows have the appearance of being three-dimensional); cl. 9 (content controlled by client portal and third party remote portal); cl. 10 (content may be changed); cl. 11 (content may be updated); cl. 13 (content "revolves continuously"); cl. 14 (display windows pause intermittently); cl. 18 (display of content limited by time, amount and/or type). But, like claim 16, each is invalid because there is no specific information recited in any of these claims about how each of the generic components must be configured to accomplish the desired results. *See Internet Patents Corp.*, 790 F.3d at 1348.

As such, each and every claim of the '330 Patent fails to pass § 101's important test designed to ensure that the public retain access to the "storehouse of knowledge of all

men . . . free to all men and reserved exclusively to none." *Bilski*, 561 U.S. at 601-02 (quotations omitted).

## IV.  CONCLUSION

For the foregoing reasons, Zazzle respectfully requests that the Court dismiss this case for failure to state a claim upon which relief can be granted.  Because leave to amend would be futile, Zazzle respectfully requests dismissal with prejudice.

Dated:  September 6, 2016

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Neil J. McNabnay*
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Theresa M. Dawson
tdawson@fr.com
Texas Bar No. 24065128
1717 Main Street, Suite 5000
Dallas, Texas  75201
(214) 747-5070 - Telephone
(214) 747-2091 - Facsimile

**COUNSEL FOR DEFENDANT ZAZZLE INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 6, 2016, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.5(b).

*/s/ David B. Conrad*
David B. Conrad