UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SAMUEL LIT,** | |
| **Plaintiff,** | Case No. 1:16-cv-07054 |
| v. | **PATENT CASE** |
| **ZAZZLE INC.,** | **Jury Trial Demanded** |
| **Defendant.** | |

**ZAZZLE INC.'S REPLY IN SUPPORT OF RULE 12(b)(6)**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant Zazzle Inc. requests that the Court grant its Motion to Dismiss because, as confirmed by Plaintiff's opposition, the '330 Patent does not embrace patent-eligible subject matter. Plaintiff has not pointed to a single plausible issue that could pull his patent, as written, out of the realm of patent-ineligibility.

I.  ARGUMENT

The '330 Patent covers patent-ineligible subject matter and, contrary to Plaintiff's assertions, there are no disputed facts that preclude judgment under 35 U.S.C. § 101. The claims of the patent-in-suit are directed to the abstract idea of "instantly" displaying "revolving" content, such as advertisements, on a website. Nothing in Plaintiff's opposition refutes this. Plaintiff's assertion that the patent-in-suit describes "exact" means in the form of "software engines" is false, because these "engines" are described only in the abstract without any explanation of how they would work. Plaintiff has failed to identify a single issue pertinent to the eligibility analysis that would preclude dismissal. When, like here, there is no plausible reading of a patent that would enable it to satisfy the threshold inquiry under § 101, an early Rule 12(b)(6) dismissal is the best use of the Court's time and resources.

  A.  **The Claims are directed to the Abstract Idea of "Instantly" Displaying "Revolving" Content on a Website.**

Plaintiff's assertion that his purported invention is not directed to the abstract idea of "instantly" displaying "revolving" content on a website is belied by his own opposition, the claims, and the written description. Moreover, any purported "improvement" in displaying and delivering content by "cross-pollination," which Plaintiff claims is one[1] of the purportedly "novel" features

---

[1] Plaintiff later claims that the "unique arrangement" of known off-the-shelf computer components produces the "novel result of instantaneously (real time) delivery and display of content over the Internet" (Opp. at 11), which is discussed *infra*.

of the invention, is not only wrong for the reasons that follow, but it is also misplaced in the step one analysis. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (explaining that, in step two, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself").

Notwithstanding, "cross pollination" is mentioned only twice in the specification as the mere transfer of data between the various conventional off-the-shelf components. ('330 Patent, 4:50-53, 5:33-38.) But the specification does not describe *how* this cross-pollination is achieved—it is just an *idea*. At best, the specification explains that the "invention" is a "series of sophisticated software engines" that are "specifically designed" to perform certain functions "instantly." (*Id.*, 5:32-39.) But at no point does the written description ever explain in the context of the claims that these "engines" are anything other than generic software on conventional computers, what their "design[]" is, by what non-conventional mechanism they would operate, or how they are able to perform their conventional functions "instantly."

In other words, there is no specific application of the idea, as the claims contain no restrictions on how to implement the idea. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming patent ineligibility where the claim "contains no restriction on how the result is accomplished" and where "[t]he mechanism for maintaining the [web browser] state is not described, although this is stated to be the essential innovation"). Nor do the steps of the asserted claims "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or by improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft*

*Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). There is simply nothing "novel" about two off-the-shelf computers either communicating with each other or passing information back and forth.

In its recent *Electric Power Group., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) decision, the Federal Circuit underscored why such claims are not eligible for patentability. Like the claims of the '330 Patent, the *Electric Power* claims included no "particular assertedly inventive technology for performing [the allegedly inventive functions]." *Id.* Quoting the district court, the Federal Circuit recognized that "there is a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general." *Id.* (citation omitted). The claims were ineligible because, "rather than claiming 'some specific way of enabling a computer to monitor data from multiple sources across an electric power grid,' some 'particular implementation,' [the claims] 'purport to monopolize every potential solution to the problem'—any way of effectively monitoring multiple sources on a power grid." *Id.* (citation omitted). The Court further recognized that allowing such claims "'inhibit[ ] innovation by prohibiting other inventors from developing their own solutions to the problem without first licensing the abstract idea.'" *Id.* (citation omitted, alteration in original).

The claims of the '330 Patent are ineligible for the same reason. Like the *Electric Power* claims, "the focus of the claims [of the '330 Patent] is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id.* The concept embodied by the majority of limitations in the '330 Patent's claims recites an abstraction—an idea, having no particular concrete or tangible form. The claims effectively pre-empt all ways of "instantly" displaying "revolving" content, and Plaintiff does not contend otherwise. In other words, Plaintiff impermissibly "attempt[s] to patent the abstract idea of a solution to the problem in general." *See id.*

### B. The "Datafiles" are Conventional Database Structures That are Untethered to the Claims.

Plaintiff's attempt to equate the purported "datafiles" as the mechanism behind the claimed "software engines" is simply not credible. The "datafiles" depicted in Figures 2-11 are merely "data base dictionary management lists which may be present in the [purported www.yourdisplaycarousel.com system]." ('330 Patent, 5:41-44.) Indeed, Figure 9 confirms that the "mediauploads" datafile is nothing more than a representation of tabular data, identifying several fields (e.g., file, URL) and associated field types (e.g., varchar, int) that may purportedly be stored in the table:

**mediauploads**

| Field | Type | Null | Default | Comments |
|---|---|---|---|---|
| id | bigint(10) | No | | |
| user | varchar(255) | No | | |
| file | varchar(255) | No | | |
| url | varchar(255) | No | | |
| active | smallint(3) | No | 1 | |
| remote | int(9) | Yes | NULL | |
| statview | int(10) | No | 0 | |
| statclick | int(10) | No | 0 | |
| timestamp | timestamp | No | CURRENT_TIMESTAMP | |

('330 Patent, Fig. 9.) None of these describe any programming or any other mechanism by which the engines function.

Because each of Figures 2-11 depicts a traditional database table structure, Plaintiff's reliance on *Enfish*, which found a patent to a particular improvement of a database system patent-eligible, lacks merit. *Enfish*, 822 F.3d at 1339. In fact, the *Enfish* Court explicitly distinguished tabular data like the datafiles in the '330 Patent: "the claims are not simply directed to any form of storing tabular data, but instead are specifically directed to a self-referential table for a computer database." *Id.* at 1337. The specification in *Enfish* taught "that the self-referential table functions differently than conventional database structures," and noted that traditional databases, such as "those that follow the relational model and those that follow the object oriented model," were

-4-

inferior to the claimed invention. *Id.* Unlike the self-referential table functions in *Enfish*, the '330 Patent teaches only conventional database files. Plaintiff's reliance on *Enfish* is thus misplaced.

More importantly, nothing in the claims references either datafiles or mediauploads or, as Plaintiff conclusorily suggests, explains how they make the display engine or the image processing engine work. (*See* Opp. at 9.) In fact, the specification depicts the database (where the datafiles are presumably stored), image processing engine, and display engine as separate components in Figure 1. At most, claim 16 includes a database limitation: "a database comprising storage and retrieval functionality for statistical and financial information about said content displayed on said display carousel, wherein said database is in communication with said server." ('330 Patent, cl. 16.) But no programming—let alone special programming—is identified to either "store" or "retrieve" the stated "statistical and financial information."

Instead, each of these datafiles represents just information that was presumably maintained on Plaintiff's defunct website, www.yourdisplaycarousel.com. For example, the specification describes logging into the website with a username and password, two of the fields stored in the "adminusers" datafile. ('330 Patent, 6:39-46; *see also id.*, Fig. 3.) On the Content Upload screen of the website, a user could allegedly enter "[t]he file name of the content to be uploaded, as well as the website or webpage (e.g. Banner Page Link or other URL)." (*Id.*, 7:43-57.) This content corresponds directly to the "file" and "URL" fields in the "mediauploads" datafile. (*Id.*, Fig. 9.) The long-winded instructions on either how a user could navigate through the website's menus or what was presumably stored in the website's tables, however, have nothing to do with how to achieve the idea of displaying "revolving" advertisements "instantly" on a website. There is no explanation of how the information represented in the datafiles is transformed into the claimed "display carousel."

### C.      The Asserted Claims Include No Inventive Concept.

For the reasons that follow, Plaintiff's arguments that the "bridging" of servers and the "unique" arrangement of components are "inventive" features lack merit. The fundamental principle behind the conventional Internet is the bridging of clients (displaying a website in a web browser) and servers (transmitting the website information to the client). The claims simply recite the abstract idea of "instantly" displaying "revolving" content on a website with a set of generic computer components, arranged in a conventional way, and programmed to operate in a conventional manner, which is not an inventive concept. And contrary to Plaintiff's assertion (Opp. at 9), any purported "unobviousness" of the asserted claims is of no relevance in the Court's § 101 analysis. *See Intellectual Ventures I LLC v. Symantec Corp.*, No. 2015–1769, 2016 WL 5539870, at *4 (Fed. Cir. Sep. 30, 2016) ("While the claims may not have been anticipated or obvious because the prior art did not disclose [certain features], that does not suggest that the [claimed feature] is not abstract, much less that its implementation is not routine and conventional.").

#### 1.      The Purported "Bridging" of Client-Side and Server-Side is a Conventional Task.

Plaintiff claims that the "inventive concept" of his purported invention is a "cohesive system where the client side and the server side instantly transmit content back and forth so that the content may be instantly delivered to the user." (Opp. at 10.) The purported "bridging" of client-side and server-side communications and data exchange functionality, however, only underscores that the claims are directed to the abstract idea of "instantly" displaying "revolving" content on a website with no inventive concept.

According to the specification, the display engine has the function of "receiv[ing] and deliver[ing] images to client web browser" ('330 Patent, 4:34-35), and the image processing engine "processes images" (*id.*, 4:32-33). But "receiving," "sending," and "processing" information are

conventional tasks that an off-the-shelf personal computer and web browser are unquestionably capable of and, in fact, routinely do. No special, inventive programming or algorithm is either identified or necessary for the purported "engines" to implement these basic functions. Nor is there any description of how the database recited in claim 16 either "stores" or "retrieves" information in a non-conventional manner, let alone whether it is even related to the conventional database tables depicted in Figures 2-11.

The asserted claims' recitation of a "display engine," an "image processing engine," and a "database" is therefore not functionally different from reciting just a "computer" performing the abstract idea because such components are not "new machinery." *SmartGene, Inc. v. Advanced Biological Labs, SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014). Like the claims in *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016), Plaintiff's claims are "not directed to a specific improvement to computer functionality," nor do they "provide any technical details for the tangible components." *Id.* at 612.

### 2. The Specification Depicts Off-the-Shelf Components Arranged in a Conventional Manner.

Plaintiff further claims that the purported novelty is "a unique arrangement of [] known elements" and that "[t]he unique arrangement of the elements is evidenced in the datafiles" depicted in Figures 2-11. (Opp. at 11.) With the exception that the elements are "known," Plaintiff is wrong. As explained above, the datafiles have nothing to do with the claims. Even if they did, nothing in the specification indicates that the tabular data shown in the figures is used or arranged in any inventive way. Rather, the specification depicts the off-the-shelf components (i.e., the image processing engine, the display engine, and the database) arranged in a conventional manner:



FIG. 1

('330 Patent, Fig. 1.)

In this way, the asserted claims are easily distinguishable from those in *Bascom*, which improved an existing technological process by describing "how [a] particular arrangement of elements is a technical improvement over prior art ways of filtering [Internet] content," i.e., "a filter implementation versatile enough that it could be adapted to many different users' preferences while also installed remotely in a single location." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). *Bascom* is inapposite because the asserted claims of the '330 Patent include no specific or limiting recitation of improved computer technology and describe only abstract computer elements arranged in a conventional manner. *See Intellectual Ventures I*, 2016 WL 5539870, at *5 (distinguishing *Bascom* on the same grounds).

Plaintiff's reliance on *DDR Holdings* is similarly misplaced. In that case, the Federal Circuit found that the claims "recite[d] a specific way to automate the creation of a composite web page by an 'outsource provider' that incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet." *DDR Holdings*, 773 F.3d at 1259. The *DDR Holdings* Court held these patents survived § 101 scrutiny because the "claimed solution is necessarily

rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id*. at 1257. As one court recently explained, however, "*DDR Holdings* dealt with a patent that required doing something *to* a web page, not simply doing something *on* a web page, a difference that the court regarded as highly important to the issue of patent eligibility." *Kroy IP Holdings, LLC v. Safeway, Inc*., 107 F. Supp. 3d 677, 689 (E.D. Tex. 2015), aff'd, 639 F. App'x 637 (Fed. Cir. 2016) (emphasis in original).

Unlike *DDR Holdings*, the computers and computer-related features recited in Plaintiff's claims are not directed to an improvement in computer technology but instead recite generic, off-the-shelf components implemented in a conventional way to do something *on* a website. *See DDR Holdings*, 773 F.3d at 1259; *see also SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations."). This is true regardless of whether "said content is *instantly* passed between said display engine and said display carousel," because "merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015).

## II. CONCLUSION

Because the asserted claims do not cover patent-eligible subject matter and because Plaintiff has not raised any fact issues to the contrary, Zazzle respectfully requests that the Court grant its Motion to Dismiss.

Dated: October 31, 2016                     Respectfully submitted,

                                            FISH & RICHARDSON P.C.

                                            By: */s/ Neil J. McNabnay*
                                                Neil J. McNabnay
                                                mcnabnay@fr.com
                                                Texas Bar No. 24002583
                                                David B. Conrad
                                                conrad@fr.com
                                                Texas Bar No. 24049042
                                                Theresa M. Dawson
                                                tdawson@fr.com
                                                Texas Bar No. 24065128
                                                1717 Main Street, Suite 5000
                                                Dallas, Texas 75201
                                                (214) 747-5070 - Telephone
                                                (214) 747-2091 - Facsimile

                                            **COUNSEL FOR DEFENDANT ZAZZLE INC.**

-11-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 31, 2016, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.5(b).

*/s/ David B. Conrad*
David B. Conrad
